IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

U.S. ex rel. CHESTER SALDIVAR, )
      Relator, )
       )
v. )    Case No. 1:10-CV-01614-AT
       )
FRESENIUS MEDICAL CARE )
HOLDINGS, INC., )
      Defendant. )

## FRESENIUS' BRIEF IN OPPOSITION TO MOTION TO COMPEL

Relator's motion to compel seeks to force an involuntary waiver of Fresenius' attorney-client privilege. This motion should be denied. A defendant in a False Claims Act (FCA) case does not waive the attorney-client privilege by presenting evidence that it believed its conduct was lawful.

Evidence that a defendant had a belief based on the government's knowledge of the disputed activity that its conduct was lawful is relevant (and often dispositive) on issues of intent under the FCA. E.g., U.S. ex rel. Englund v. L.A. Cnty., 2006 WL 3097941, *12-13 & n.10 (E.D. Cal. 2006)("[i]t is well settled that the Federal government's knowledge of an alleged 'false' claim contradicts a defendant's intent to knowingly submit[] a false claim"; citing additional cases). As such, Relator's position would cause under the FCA a wholesale erosion of "one of the oldest recognized privileges for

confidential communications," <u>Swidler & Berlin v. U.S.</u>, 524 U.S. 399, 403 (1998).  The attorney-client privilege serves "broader public interests in the observance of law and administration of justice," <u>Upjohn v. U.S.</u>, 449 U.S. 383, 389 (1981), and that privilege should not be found to have been waived any time a FCA defendant seeks to prove that it believed its conduct was permitted under the complex rules that govern the modern regulatory state.

## Argument

Relator argues that Fresenius waived the attorney-client privilege by asserting defenses of "good faith compliance with the law" and government knowledge.  He also asserts that Fresenius' deposition testimony and discovery responses amount to a waiver.  Neither argument has merit.  The first is based on a misunderstanding of the law governing the intent element of the FCA and the law governing the waiver of privilege.  The second has no basis in the record.  Moreover, contrary to the Local Rules and the Court's Guidelines, Relator's claim that Fresenius waived the privilege in its written discovery responses was never raised with Fresenius or the Court before Relator filed his motion.  <u>See</u> LR 37.1A(1), NDGa; Doc. 51, § II.d.

## I.  Fresenius Has Not Waived the Privilege by Contesting FCA Liability.

### A.  Relator Misunderstands the Intent Element of the FCA

A proper understanding of why Fresenius has not waived the attorney-client privilege requires discussion of two items:  (1) the precise nature of the evidence Fresenius intends to submit on the issue of FCA intent; and (2) the precise contours of the law governing the intent element of the FCA and waiver of the privilege.  Relator does not accurately describe either item in his motion, and his waiver cases do not apply because they do not address the FCA in any way.  Fresenius has not waived its attorney-client privilege by implication.

### 1.    The Evidence at Issue Does Not Include Legal Advice

Fresenius expects that its witnesses (who will include both lawyers and non-lawyers involved in setting Fresenius' policies on overfill) will testify at summary judgment or trial:  (a) that a series of interactions with Medicare, the Department of Justice, and other government agents from 1992 onward convinced them that the government fully understood Fresenius' policy and practice of billing for overfill and concurred that it was not unlawful; (b) that they were not aware of any rule prohibiting Fresenius' practices; (c) that there is no clear, authoritative statement by the government prohibiting Fresenius' practices; (d) that they saw no reason to change the overfill practices in the years following the adoption of the Medicare Modernization Act and subsequent regulations; (e) that they were aware of Fresenius' and

others disclosures to the government regarding overfill; (f) that the government's reaction to these disclosures was to consent to or approve the continued submission of the claims; and (g) that they were aware of widespread industry practice of using and billing for overfill.  In short, Fresenius intends to prove through the testimony described above and other evidence (including expert testimony) that its decision-makers reasonably concluded that administering and billing for the entire contents of a vial was permitted.  However, Fresenius has not presented evidence that its attorneys provided legal advice on this subject.[1]

## 2.    Fresenius' Evidence Does not Waive the Privilege under a Proper Understanding of FCA Intent

Relator asserts that, by advancing the evidence described above, Fresenius has "inject[ed]" the issues of "good faith compliance with the law" and "government knowledge inference" into the case, thus impliedly waiving the privilege.  Brief, pp. 1, 18.  He claims these "defense[s]" require an

---

[1] This evidence is also relevant to the materiality and damages elements, and may be relevant to the falsity element should the Court reconsider its prior ruling.  See Fed. R. Civ. P. 54(b)("any order … that adjudicates fewer than all the claims … may be revised at any time before the entry of a judgment adjudicating all the claims…."); Herman v. Hartford, 508 F. App'x 923, 928 n.1 (11th Cir. 2013)(court has authority under Rule 54(b) to revise interlocutory summary judgment orders); Raiford v. Nat'l Hills, 2014 WL 97359, *1 (S.D. Ga. 2014).

"examination" into Fresenius' "actual knowledge about whether its actions conformed to the law" – including attorney-client privileged documents – to determine whether Fresenius had the requisite FCA intent.  Id. at p. 2.  Not so.  Relator's argument fails because – among other reasons – it reflects a misunderstanding of the law governing the intent element of the FCA.

A well-developed body of FCA law establishes that the dispositive question is whether Fresenius' understanding was reasonable and, further, that answering this question does not require an examination of whether any lawyer at any time held a contrary view (a fact that Fresenius does not concede).  The determination of "intent" under the FCA does not turn on the individual views of any particular lawyer because the FCA "is not a vehicle to police technical compliance with complex federal regulations."  U.S. ex rel. Williams v. RCG, 696 F.3d 518, 532 (6th Cir. 2012).  Instead, courts recognize that when a defendant's allegedly false statements were "based on a reasonable interpretation of a statute" that was not foreclosed by an existing "authoritative contrary interpretation," the defendant could not have acted with even the minimum degree of knowledge the FCA requires.  U.S. ex rel. Hixson v. Health Mgmt., 613 F.3d 1186, 1190 (8th Cir. 2010); see also U.S. ex rel. Kersulis v. RehabCare, 2007 WL 294122, *13 (E.D. Ark. 2007)(citing U.S. v. Whiteside, 285 F.3d 1345, 1350-51 (11th Cir. 2002)).

5

Supreme Court case law confirms that the reasonableness of the defendant's interpretation is determined <u>without</u> regard for the defendant's subjective "understanding" of the law.  <u>See</u> <u>Safeco v. Burr</u>, 551 U.S. 47, 70 n.20 (2007); <u>U.S. ex rel. K & R L.P. v. Mass. Hous.</u>, 530 F.3d 980, 983-84 (D.C. Cir. 2008)(citing <u>Safeco</u>).  In fact, it is not relevant if a lawyer or business person understood that the law could be interpreted contrary to the position taken by the defendant.  <u>See</u> <u>id.</u>  This is because, under the FCA, "[t]o take advantage of a disputed legal question … is to be neither deliberately ignorant nor recklessly disregardful."  <u>U.S. ex rel. Hagood v. Sonoma Cnty.</u>, 929 F.2d 1416, 1421 (9th Cir. 1991); <u>see also</u> <u>Safeco</u>, 551 U.S. at 69-70; <u>Hixson</u>, 613 F.3d at 1190; <u>U.S. ex rel. Siewick v. Jamieson Sci.</u>, 214 F.3d 1372, 1378 (D.C. Cir. 2000); <u>U.S. v. Sodexho</u>, 2009 WL 579380, *17 (E.D. Pa. 2009), <u>aff'd</u>, 364 F. App'x 787 (3d Cir. 2010)(when defendants "merely adopted a reasonable interpretation of regulatory requirements which favored their interests," no basis existed for imposing FCA liability).  A defendant's "reasonable interpretation of any ambiguity inherent in the [law] belies the scienter necessary to establish a claim of fraud under the FCA." <u>U.S. ex rel. Ketroser v. Mayo</u>, 729 F.3d 825, 832 (8th Cir. 2013).  Even the case law Relator cites acknowledges this same principle.  <u>See</u> <u>U.S. ex rel. Burlbaw v. Orenduff</u>, 548 F.3d 931, 957 (10th Cir. 2008)(taking "advantage of

6

a legal paradox" does not constitute a knowing violation of the FCA). [2]

Under these authorities, Relator's speculation that privileged documents or testimony may show that Fresenius "independently knew its conduct was wrong" is beside the point (Brief, p. 11), and waiver therefore would serve no purpose. Relator has yet to identify an "authoritative contrary interpretation" of the governing Medicare rules by the agency. That is because none exists. Fresenius respectfully submits that the confusion in the regulations is easily demonstrated by (a) Relator's own failure to even mention the ASP rules that formed the basis of the Court's "falsity" decision in his initial complaint or Rule 26 disclosures of the statutory basis of his claim, and (b) the Court's summary judgment order, which does not suggest that either Congress or the agency made a clear or authoritative statement contrary to Fresenius' views. See Doc. 144, pp. 18-22 (basing ruling on matters implicit in statutes and CMS rules). Indeed, CMS has already made

---

[2] If the Court determines that any portion of Fresenius' evidence described above may be presented only if it waives privilege, or depending on future developments in the case, Fresenius may decide to waive and have its lawyers and decision-makers testify about legal advice. However, such a decision could only be made once the subject matter of the waiver is defined. See Belmont Holdings v. Suntrust Banks, 2012 WL 6430598, *4 (N.D. Ga. 2012)(waiver applies only to the "subject matter" of the protected communication).

clear that it "has <u>never</u> issued a policy on the topic of 'overfill'" and that it

"does <u>not</u> make any payment determinations based on the absence or

presence of 'overfill' in a vial."  Ex. A, p. 2 (emphasis added).

When, as here, the rules are, at a minimum, susceptible to more than

one possible interpretation, the relevant inquiry is whether the defendant's

interpretation is reasonable – not whether the defendant may have

documents (or even legal advice) that suggest another alternative

interpretation existed.  <u>See</u> <u>U.S. ex rel. Gudur v. Deloitte</u>, 512 F. Supp. 2d

920, 951-52 (S.D. Tex. 2007)(granting summary judgment for defendant when

experts testified there was "little guidance for Deloitte to consider in

formulating its rate recommendations" and its rates did not violate a "specific

and defined rate-setting methodology," despite relator's argument that

defendant's rate-setter was told "the rates appeared questionable").  The

premise of this body of FCA law is that if the matter is in dispute (and no

authoritative contrary statement has been made by the agency), a defendant

may still elect "[t]o take advantage of a disputed legal question."  <u>Hagood</u>,

929 F.2d at 1421.

In this case, the reasonableness of Fresenius' interpretation will be

demonstrated by the government knowledge of the practice, Fresenius' (and

others') specific disclosures on the subject, agency reaction to the knowledge,

and industry practice.  It will not turn on whether somewhere, sometime within Fresenius, a lawyer held a differing opinion or concern on this subject (again, a fact Fresenius does not concede).  Otherwise, every FCA case challenging intent based in part on the reasonableness of an interpretation of a rule and attendant circumstances would result in, and require, a waiver of the attorney-client privilege.  Defendants should not be put to such a choice, as reflected in case law rejecting Relator's approach.  See U.S. ex rel. Robinson v. Northrop Grumman, 2003 WL 21439871, *3 (N.D. Ill. June 20, 2003)(rejecting claim that government knowledge argument waived privilege); see U.S. v. Ohio Edison, 2002 WL 1585597, *5 (S.D. Ohio July 11, 2002)(in suit to enforce EPA regulations, observing that "routine defenses" relating to the interpretation of a government regulation do not trigger waiver, as such a result would "unduly … discourage parties from raising valid defenses").

Significantly, none of the waiver cases Relator cites involves the FCA. For example, Cox v. Administrator – the marquee case in Relator's motion – is a RICO case that does not implicate the "intent" jurisprudence that has developed under the FCA.  17 F.3d 1386, 1394 (11th Cir. 1994).  U.S. v. Exxon involved a government lawsuit to recover overcharges in the sale of oil where the defendant asserted an affirmative defense that – rather than being

based on the reasonableness of the defendant's interpretation – directly implicated its "subjective interpretation and understanding" of certain Department of Energy policies and directives. 94 F.R.D. 246, 249 (D.D.C. 1981). U.S. v. Bilzerian and U.S. v. Mackey are criminal cases. 926 F.2d 1285 (2d Cir. 1991); 2012 WL 3260462 (N.D. Ga. Aug. 8, 2012). Carpenter v. Mohawk Indus. is an employment case in which the employer attempted to defend plaintiff's termination by relying in part on the fact that it involved outside counsel in the investigation. 2007 WL 5971741, *13 (N.D. Ga. 2007). Jackson v. Deen similarly involved an outside attorney investigating harassment complaints and formulating human resources procedures. 2013 WL 3863889, *5 (S.D. Ga. 2013). Outside the Box Innovations v. Travel Caddy is a patent infringement case involving an advice-of-counsel defense. 455 F. Supp. 2d 1374 (N.D. Ga. 2006). And, in Sperling v. Kennesaw Police Dep't, the plaintiff waived the privilege by referring to a narrative she had prepared at counsel's instruction during her deposition. 202 F.R.D. 325, 328 (N.D. Ga. 2001). The rationale for finding waiver in these cases does not apply here given the substantive law underlying Relator's claims. While a defendant can choose to rely on legal advice provided by counsel as proof of "good faith," it is not required to do so.

### B.   Fresenius' Arguments Do Not Implicate Privileged Communications

Relator's motion also relies on an overly broad interpretation of <u>Cox</u> and the "at issue" waiver doctrine.  Contrary to Relator's characterization of Fresenius' litigation position, Fresenius has not "injected" new issues into this case by maintaining that intent – an essential element of Relator's claim – is lacking.  Relator's belief that Fresenius' privileged communications may help him establish intent is incorrect for the reasons discussed above, but, even if those communications were potentially relevant, that alone is insufficient to justify finding an implied waiver of the privilege.

At the outset, Fresenius did not "inject" privileged communications into the case by denying that it possessed fraudulent intent because it had a good faith interpretation of the relevant laws.  Fresenius' arguments directly respond to Relator's allegations of intent, which is an essential element of Relator's FCA claims, on which Relator bears the burden of proof.  A privilege holder does not waive protection by denying a plaintiff's intent allegations. See <u>Lorenz v. Valley Forge Ins.</u>, 815 F.2d 1095, 1098 (7th Cir. 1987), <u>cited</u> in <u>Cox</u>, 17 F.3d at 1419; <u>Harter v. Univ. of Indianapolis</u>, 5 F. Supp. 2d 657, 664 (S.D. Ind. 1998).  This is true even when the defendant reiterates its denial in the form of an affirmative defense.  See <u>Cardtoons v. MLB Players Ass'n</u>, 199

11

F.R.D. 677, 682 (N.D. Okla. 2001)(waiver decision should not be based on "the semantic distinction of whether Defendant has denied Plaintiff's assertion of bad faith or made an affirmative assertion of good faith").

Nor has Fresenius otherwise "injected" privileged communications into the case.  As the Eleventh Circuit explained in Cox, the attorney-client privilege has a critical role in "the observance of law and administration of justice."  17 F.3d at 1414 (quoting Upjohn, 449 U.S. at 389).  Waiver of the privilege occurs only in limited circumstances when a client: (1) "testifies concerning portions of the attorney-client communication"; (2) "places the attorney-client relationship directly at issue"; or (3) "asserts reliance on an attorney's advice as an element of a claim or defense."  Id. at 1418.  Waiver also potentially occurs when a litigant attempts to use the privilege simultaneously as a "shield" and as a "sword" by "inject[ing] into the case an issue that in fairness requires an examination of otherwise protected communications."  Id. at 1418-19.  Courts hold the privilege waived only when it would be "manifestly unfair" to the opposing party to protect against disclosure of the information.  Id.  "The key to a finding of implied waiver … is some showing by the party arguing for a waiver that the opposing party relies on the privileged communication as a claim or defense or as an element of a claim or defense."  In re Cnty. of Erie, 546 F.3d 222, 228 (2d Cir. 2008).

12

That the standard for waiver was satisfied on the facts of <u>Cox</u>, which, as noted above, is not an FCA case, does not demonstrate that implied waiver has occurred here.  Fresenius has not relied on any privileged communications to support its defenses or refute Relator's claims.  Indeed, Relator identifies a single piece of evidence – a few lines of testimony in Mr. Castle's deposition – that purportedly constitute privileged information, but, as discussed below, Mr. Castle was not testifying about privileged communications – he was referring and will refer at trial to non-privileged communications exchanged between Fresenius and the government and the absence of any authoritative rules barring the conduct.  None of the circumstances potentially resulting in waiver exists here.

### 1. Fresenius' Government Knowledge Argument Does Not Waive the Privilege

<u>Robinson</u> addressed and rejected the precise argument Relator advances with respect to waiver and government knowledge.  Like Relator here, the relator in <u>Robinson</u> argued that privileged documents may show that the defendant "may not have made full disclosures to the Government."  2003 WL 21439871 at *3.  The court disagreed, explaining that when, as here, the defendant does not claim that "the proof that it fully apprised the Government of its actions is contained in" the privileged materials, the

relator's "speculation that something contained within [those materials] might disprove [the government knowledge] defense does not place the privileged communications at issue." Id.  In short, the question of whether a defendant made full disclosures to the government "depends on a review of communications between those two parties [i.e., the defendant and the government], not between [the defendant] and its lawyers." Id.

Burlbaw, cited by Relator, is not an attorney-client privilege waiver case, and its general observation that government knowledge "does not automatically preclude a finding of scienter" is not a holding that a defendant exposes privileged communications to discovery whenever it invokes government knowledge because there is a chance those communications will undermine the defendant's argument.  548 F.3d at 952.  Likewise, no waiver issue was raised in U.S. v. Newport News, 276 F. Supp. 2d 539 (E.D. Va. 2003), also cited by Relator.  Moreover, that court's discussion of disclosures that tend to establish government knowledge focused on disclosure of a defendant's "practices" and "procedures," not legal advice it received from counsel.  Id. at 564.  The court in fact emphasized objective considerations, such as "the clarity of the regulation and the reasonableness of [the defendant's] interpretation," in determining whether the defendant "reckless[ly] disregard[ed]" the falsity of its statements.  Id.

14

2.     **The Reasonableness of Fresenius' Understanding That Billing for Overfill Was Permitted Also Does Not Turn on Attorney-Client Communications**

Relator attempts to equate Fresenius' argument that its interpretation of the applicable Medicare rules was reasonable with the type of advice-of-counsel defense that triggers waiver.  Relator's argument is misplaced, as several cases have held in analogous circumstances where, as here, the relevant standards are, at a minimum, ambiguous.

For example, in In re AT&T Access Charge Litig., a group of local exchange carriers sued AT&T to recover retroactive interstate access charges for long-distance traffic.  451 F. Supp. 2d 651, 653 (D.N.J. 2006).  AT&T asserted an affirmative defense that retroactive recovery would be "inequitable and unlawful" and also stated that it had "detrimentally relied on its understanding that the service would not be subject to access charges" based on prior FCC rulings.  Id. at 654.  The plaintiffs argued that these assertions waived the attorney-client privilege with respect to any documents discussing AT&T's decision to withhold payment of access charges.  Id. at 655.  The court rejected that argument as "speculation," explaining that the reasonableness of AT&T's reliance on the decisions of the FCC turned on "the plain language of the FCC rulings" and other evidence that was not privileged and noting that AT&T expressly stated it would not rely on the

advice of counsel to demonstrate reasonableness.  Id. at 656-57.  Likewise, Fresenius' view was that the rules and statutes did not prohibit billing for overfill and, as such, its view is based on the plain language of those rules, as well as the government knowledge and industry practices described above.

Other decisions are in accord.  For example, in Harter v. CPS Sec., the court held that no waiver occurred when the "good faith" defense was based on Department of Labor opinions and advice from a management consultant who happened to be a lawyer, because the defendants did not rely on privileged advice and would not necessarily or inevitably be forced to reveal privileged communications.  2013 WL 3108947, *8 (D. Nev. June 18, 2013). In Ohio Edison, the court held that the defendants' arguments that they reasonably interpreted EPA regulations not to require a permit and did not receive notice of EPA's contrary interpretation did not place privileged communications at issue.  2002 WL 1585597 at *3-5.  The court rejected the government's argument – like Relator's arguments here – that it "need[ed] to know what Ohio Edison was told by its attorneys concerning how the[] regulations applied" to rebut the defenses, explaining that relevancy is not the standard for waiver.  Id.  See also Banco do Brasil v. 275 Wash. Street, 2011 WL 3208027, *3 (D. Mass. July 27, 2011)("The mere fact that the Bank believes that it acted in good faith under its lease agreement, and that its

counsel was involved in the process, does not constitute a waiver of the attorney-client privilege."); Dixie Mill v. Cont'l Cas. Co., 168 F.R.D. 554, 559 (E.D. La. 1996)(no waiver where "good faith" defense raised reasonableness questions that could be "proved by objective facts" that "do not necessarily require the introduction of privileged communications").

Relator's reliance on Bilzerian does not change the analysis. That case "stand[s] for the principle that when a party asserts a defense of good faith or reasonableness, and affirmatively offers testimony that the party consulted with their attorneys as factual support for the defense, and when counsel's advice in some way supports the defendant's good faith belief, the defendant has put his counsel's advice 'at issue' and thereby waives the attorney client privilege." Henry v. Quicken Loans, 263 F.R.D. 458, 469 (E.D. Mich. 2008) (emphasis added). Fresenius has not presented any attorney-client communications containing legal advice. It will present the other reasons for the decisions of executives (some of whom are lawyers) who decided to continue Fresenius' practices and it will present evidence of direct communications involving its attorneys, business people, and the government. But, as these cases show, the attorney-client privilege is not waived by relying on non-privileged, factual testimony about communications with the government or why a particular decision was made apart from any

legal advice.  It is permitted for Fresenius witnesses (including its lawyers who were making these decisions) to explain why they made decisions without necessarily disclosing legal advice sent or received.

### C.   Relator's Relevancy Arguments Do Not Justify Waiver

Relator's motion amounts to an argument that <u>Cox</u> requires waiver any time privileged communications are potentially relevant to a claim or defense.  That is not the case.  In <u>Cox</u>, the Eleventh Circuit recognized that it "cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant."  17 F.3d at 1418 (citation omitted).  Under <u>Cox</u>, "relevance provides no justification for ignoring the attorney-client privilege" when the privilege holder is not affirmatively arguing reliance on counsel.  <u>In re Hillsborough Holdings</u>, 176 B.R. 223, 241 (Bankr. M.D. Fla. 1994).  Under these circumstances, denying discovery is in no way "manifestly unfair" to Relator.

Other cases similarly recognize that a party cannot force a waiver of its adversary's privileged communications by speculating that those communications may be helpful to its litigation position.  "Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in

18

a relevant manner." <u>Rhone-Poulenc Rorer v. Home Indem.</u>, 32 F.3d 851, 863 (3d Cir. 1994); <u>see</u> <u>also</u> <u>Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors</u>, 266 F.R.D. 1, 13 (D.D.C. 2010)(finding waiver "upon a showing of need and relevance…. is not a legitimate interpretation of the attorney-client privilege but is a modification of its very essence without legislative authority"); <u>Williams v. Sprint/United Mgmt.</u>, 464 F. Supp. 2d 1100, 1107 (D. Kan. 2006)("the mere fact that privileged material is relevant to a matter that is raised as an issue in connection with the assertion of an affirmative defense is insufficient to trigger a waiver").

## II.   Fresenius Did Not Otherwise Waive Privilege in Deposition Testimony or Discovery Responses.

Relator's arguments that Fresenius waived the privilege through Mr. Castle's deposition testimony and responses to document requests also fail. Mr. Castle did not divulge a legal opinion or any other privileged information, and Fresenius has preserved its objection to producing privileged documents.

Relator noticed Fresenius Senior Vice President and Deputy General Counsel Ronald Castle for deposition, and Fresenius produced him for deposition more than 15 months ago. Relator's questions at the deposition focused on a July 5, 2011 declaration Mr. Castle submitted in support of Fresenius' motion to dismiss describing the process for Medicare

reimbursement and Fresenius' disclosures to the government (Doc. 42-2).
See, e.g., Ex. B, 7:3-13:23; 81:10-88:12.  Mr. Castle stated in that declaration
that all of the matters therein were based on public and non-privileged
information and communications, and that Fresenius "does not, by inclusion
of anything in this Declaration, waive any claims to privilege and
confidentiality arising under the attorney-client communication or attorney
work product doctrines."  See Doc. 42-2, at ¶ 3.

Relator also inquired at the deposition about the basis for Fresenius'
understanding that billing for overfill was permitted.  Mr. Castle testified
that Fresenius' understanding was based on the government's payment
methodology and the absence of a prohibition on the practice.  Ex. B, 51:12-
19; 52:20-53:10.  He did not testify about a legal opinion or testify that advice
of counsel had a role.  He was involved as a decision maker for Fresenius on
these matters.  He was not asked, and did not testify about, legal advice
given.  The primary basis for Mr. Castle's testimony was the text of the rules
establishing the payment methodology and the government's reactions to
Fresenius' repeated disclosures on these subjects.  Factual testimony about
the statements made to and by government officials relates to facts involving
third-parties, not privileged communications between Fresenius and its
lawyers.  As such, Fresenius permitted Relator to inquire on these topics –

20

there was no basis for an objection.  See, e.g., Upjohn, 449 U.S. at 395 (the privilege "extends only to communications and not to facts"); In re Fed. Grand Jury Proceedings, 938 F.2d 1578, 1582 (11th Cir. 1991)("[t]he attorney client privilege protects communications rather than information").

In similar circumstances, courts repeatedly have held that the substance of the testimony, not the witness's status as an attorney, controls the question of waiver.  When, as here, an attorney's testimony does not disclose the advice of counsel, no waiver occurs.  See Blankenship v. USA Truck, 515 F. App'x 622, 623 (8th Cir. 2013)(defendant did not waive privilege by calling in-house counsel to testify at trial regarding non-privileged communications with plaintiff); Motley v. Marathon, 71 F.3d 1547, 1552 (10th Cir. 1995)(designation of lawyer to testify as corporate representative at deposition did not waive privilege when testimony did not concern advice of counsel); cf. Banco do Brasil, 2011 WL 3208027 at *3 (counsel's affidavit that defendant made "every reasonable effort" to obtain permits did not result in waiver).

Relator cites Jackson v. Deen, claiming that it "consider[ed] the very issue before the Court" (Brief, p. 14), but that case is readily distinguishable. Jackson was an employment harassment and discrimination case involving testimony by defendants' outside counsel who was acting strictly as a legal

advisor.  2013 WL 3863889 at *1-2.  The defendants argued that all of his communications were privileged, yet sought to use his testimony on the same subject while objecting to questions the plaintiff posed on those very same topics.  Id. at *4-5.  The court's rationale was driven by the nature of the plaintiff's hostile work environment claims, which "necessarily implicate[d] the employer's investigatory procedures and remedial methods."  Id.

Fresenius, in contrast, has not engaged in any "selective" disclosure – Mr. Castle testified regarding facts, not legal opinions or advice, and Fresenius provided Relator unfettered discovery of his testimony into those factual matters.  Mr. Castle (and Fresenius' other witnesses) answered Relator's questions and did so on factual matters that are not privileged. Moreover, Relator's counsel asked the questions that resulted in what he now contends is "selective disclosure [of privileged material] for tactical purposes." Brief, p. 14.  If, as Relator now seems to contend, these questions were intended to invade the attorney-client privilege (and not simply seek factual testimony about the reason for Fresenius' views), it would have been improper to have done so.  See Ag Gro Serv. v. Sophia Land, 8 F. Supp. 2d 495, 498 (D. Md. 1997)("[i]t is not permissible for an attorney deliberately to invade an adverse party's attorney-client privilege").

Fresenius also did not waive the privilege in responding to Relator's requests for documents on the narrow topics of "the method for calculating the Average Sales Price" and "how overfill in dialysis drug vials is treated in the calculation of ASP."  Brief, p. 4.  First, this argument was <u>not</u> raised (a) when Fresenius' responses or privilege logs were served; (b) in any letters or conferences between the parties; or (c) at any court conference.  As such, Relator's motion based on Fresenius' written discovery responses should be denied under Local Rule 37.1A(1) and the Court's Guidelines. Doc. 51, § II.d.

Second, Fresenius' written responses <u>did</u> assert an objection that applied to all of Relator's requests notifying Relator that it would not produce privileged materials.  <u>See</u> Doc. 158-4, Obj. No. 2 ("Fresenius objects to the production of any documents protected from disclosure by the attorney-client privilege, work product immunity, or other applicable privilege or immunity.").  Then, as Fresenius completed its review of documents, it served privilege logs identifying, document-by-document, the specific materials to which that objection applied, consistent with this Court's Guideline § II.c.ii. The privilege objection and the log preserved Fresenius' objection.  <u>See</u> <u>Tetra Fin. v. Cell Tech</u>, 2010 WL 1740855, *2  (D. Utah 2010)(rejecting argument that party waived privilege "by failing to include a specific objection for the privilege in its original response to this request"; no legal authority supported

waiver, and general objection was "more than sufficient to preserve any arguments Tetra had with respect to the attorney-client privilege"); USF Ins. v. Smith's Food, 2011 WL 2457655, *3 (D. Nev. 2011)(production of privilege log precludes claim of surprise or prejudice, and waiver is not warranted).[3]

Underscoring this point, the Protective Order in this case provides that the inadvertent production of information protected by the attorney-client privilege "shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege" for that information.  Doc. 70, ¶ 15. Similarly, Fed. R. Evid. 502(b) provides that inadvertent disclosure of privileged material will not result in waiver when the privilege holder acted reasonably.  Fresenius acted reasonably to assert the privilege here, making a clear privilege objection followed by detailed privilege logs.  This is true especially where Relator never raised any issues at all before filing this motion regarding Fresenius' privilege logs or its privilege objection.

---

[3] Relator's discussion of Fresenius' production of documents related to Venofer® appears intended to explain why he waited 15 months to file this motion, rather than as substantive support for a finding of waiver.  Fresenius did not commit a discovery violation by limiting its responses to the two drugs at issue in this litigation, Epogen® and Zemplar®.  This was consistent with the parties' agreement regarding discovery.  See Doc. 59, pp. 15, 18 (Relator is seeking discovery about policies for Epogen® and Zemplar® and Fresenius agrees to this limitation; Venofer® is not listed in the discovery plan or Relator's pre-stay discovery requests).

In any event, even when a court finds a deficiency in a party's privilege objections – and none exists here – it should not result in a blanket forfeiture of the privilege absent a showing of misconduct, because waiver is a drastic measure.  See Flintco v. U.S., 2012 WL 3276158, *5 (Fed. Cl. 2012)("waiver of privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith"); Welch v. Eli Lilly, 2009 WL 700199, *14-15 (S.D. Ind. 2009); Jones v. Am. Gen. Life, 2002 WL 32073037, *6 (S.D. Ga. 2002); Mills v. Iowa, 285 F.R.D. 411, 413 (S.D. Iowa 2002).

## Conclusion

For all the foregoing reasons, Fresenius respectfully requests that Relator's motion to compel be denied.

Dated: January 22, 2014          Respectfully submitted,

DOWD BENNETT LLP

By:   /s/ James F. Bennett
        James F. Bennett
        Megan S. Heinsz
        Lisa S. Hoppenjans
        7733 Forsyth Blvd., Ste. 1900
        St. Louis, MO 63105
        (314) 889-7300 (phone)
        (314) 863-2111 (fax)

        J. Matthew Maguire, Jr.
        Georgia Bar No.  372670
        PARKS CHESIN &
        WALBERT PC
        75 14th Street
        26 Floor
        Atlanta, GA  30308
        Telephone:  (404) 873-8000

        Attorneys for Fresenius
        Medical Care Holdings, Inc.
        d/b/a Fresenius Medical Care
        North America

## <u>CERTIFICATE OF COUNSEL REGARDING FONT SIZE</u>

Counsel certifies that the foregoing has been prepared using Century Schoolbook font size 13 in accordance with Local Rules 5.1(C) and 7.1(D).

This 22nd day of January, 2014.

<u>**/s/ James F. Bennett**</u>
James F. Bennett

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of January 2014, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which sent notification of the filing to all counsel of record.

<u>**/s/ James F. Bennett**</u>
James F. Bennett