IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. CHESTER SALDIVAR, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FRESENIUS MEDICAL CARE HOLDINGS, INC., | : | CIVIL ACTION NO. 1:10-CV-1614-AT |
| | : | |
| Defendant. | : | |

## ORDER

This matter is before the Court on Relator's Motion to Compel Production of Attorney Client Privileged Documents and Testimony [Doc. 158].   Relator argues that under *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1419 (11th Cir. 1994), Defendant Fresenius Medical Care Holdings, Inc. waived the attorney client privilege when it asserted its defense of good faith reliance upon a belief that its conduct was legal.   The Court agrees.

In *Cox*, the Eleventh Circuit held that when a party affirmatively asserts as a defense that it believed its actions were legal, it "inject[s] the issue of its knowledge of the law into the case and thereby waive[s] the attorney-client privilege."   *Cox*, 17 F.3d at 1419.   *Cox* was a civil Racketeer Influenced and

Corrupt Organizations Act ("RICO") case.[1]   The plaintiffs, all employees of

defendant USX Corporation ("USX"), alleged that USX entered into an unlawful

agreement with certain union representatives granting them retroactive leaves of

absence to increase the years counting towards their pensions.  *Id.* at 1393.  In

defense, USX consistently took the position that, at all relevant times, it believed

its revised leave-of-absence policy was lawful.  *Id.* at 1418.  However, when asked

about its knowledge of the legality of its actions in deposition questions,

document requests and interrogatories, USX asserted the attorney-client

privilege and maintained that it had no intent to assert a "defense of advice of

counsel or rely on any privileged attorney-client communications in its defense."

*Id.* at 1418; *see also id.* at 1395.  The plaintiffs moved to compel.  In response,

USX denied any intent to assert a defense of advice of counsel or rely on

privileged communications.  Nonetheless, the district court granted the plaintiff's

motion.  *Id.* at 1418.  The court reasoned that "USX's defense . . . necessarily

implicates all of the information at its disposal when it made the decision to

change the leave of absence policy and later, rescind the change."  *Id.*  The court

continued, "[I]t would be inequitable, to allow USX to present evidence tending

to show that it intended to comply with the law, while allowing it to cloak in

---

[1] The plaintiffs in *Cox* also brought a breach of contract claim and claims under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et seq.*, Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, 29 U.S.C. § 186.  *Cox*, 17 F.3d at 1394-95.

privilege those documents tending to show it might have known its actions did not conform to the law." *Id.*

On appeal, the Eleventh Circuit explained that by affirmatively asserting it believed its actions were lawful, USX placed its knowledge of the legality of its actions at issue. *Id.* at 1419 (citing *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991)).[2]  "USX could have denied criminal intent without affirmatively asserting that it believed its change in pension fund was legal.  Having gone beyond mere denial, affirmatively to assert good faith, USX injected the issue of its knowledge of the law into the case and thereby waived the attorney client-privilege." *Id.* at 1419.  It did not matter that USX denied any intent to assert a defense of advice of counsel or rely on privileged communications. *Id.*  The court reaffirmed the principle that "the attorney-client privilege was intended as a shield, not a sword" and affirmed the district court's decision to compel disclosure of privileged material.  *Id.* at 1418-19 (internal quotation marks

---

[2] The court compared the case to *Bilzerian*, in which a securities fraud defendant announced his intention to testify that he believed in good faith that his Securities and Exchange Commission ("SEC") disclosures were legal.  *Cox*, 17 F.3d at 1419 (citing *Bilzerian*, 926 F.2d at 1292).  The district court in *Bilzerian* had ruled that if the defendant did in fact testify to his belief that his SEC disclosures were lawful, he would waive the attorney-client privilege with respect to all communications regarding the legality of his action.  *Bilzerian*, 926 F.2d at 1292.  To avoid this waiver, the defendant declined to assert this defense that he believed his conduct was lawful. *Id.* He was convicted. *Id.*  The defendant challenged his conviction, arguing that the district court's waiver ruling deprived him of the right to deny criminal intent. *Id.* at 1293.  The Second Circuit disagreed and held that the defendant's "testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue." *Id.*  The court recognized that the criminal defendant could have simply denied criminal intent without asserting good faith. *Id.*  The Eleventh Circuit did not distinguish the civil from criminal contexts of the cases. *Cox*, 17 F.3d at 1419.

omitted) (quoting *GAB Business Services, Inc. v. Syndicate* 627, 809 F.2d 755, 762 (11th Cir. 1987)).

The case before this Court is no different.   Fresenius's theory of non-liability arises out of its "*belief* based on the government's knowledge of disputed activity that its conduct was lawful."  (*See, e.g.*, Def. Resp. Pl. Mot. Compel at 1, Doc. 165 (emphasis added).)  Specifically, according to Ron Castle, Fresenius's Deputy Counsel for International Litigation, Fresenius developed its belief that it could legally bill for overfill because the government had paid for Epogen based upon the unit administered.  (Castle Dep. at 51, Doc. 164-2.)   That Fresenius maintains it will not rely on an advice of counsel defense does not change the analysis.[3]   *See Cox*, 17 F.3d at 1417.   Fresenius has consistently argued it has always believed no rule or regulation forbade billing for overfill.  (*See, e.g.*, Def. Summ. J. Br. at 2.)  And now Fresenius explains that its witnesses (both lawyers and non-lawyers) will provide testimony to support this argument.   (*See* Def. Resp. Mot. Compel at 3-4, Doc. 165.)  To allow Fresenius to argue its good faith belief that its conduct was legal, but deny the Relator an opportunity to fully explore Fresenius's belief, would prejudice the Relator and thus be manifestly unfair.  *See Cox*, 17 F.3d at 1417-18.  Fresenius's affirmative reliance on its belief

---

[3] Moreover, one Fresenius witness, its former Chief Compliance Officer Todd Kerr, affirmatively testified that he "relied on the analysis from attorneys" when assessing whether billing for overfill was appropriate.  (*See* Kerr Dep. at 21-24, Doc. 165-1.)

4

during all relevant times that its conduct was legal is thus sufficient to waive the attorney-client privilege.

As in *Cox*, here Fresenius could deny fraudulent intent without affirmatively asserting that it believed its conduct was legal.  To prevail on his False Claims Act ("FCA") claim at trial, Relator must prove that Fresenius *knowingly* submitted a false claim or *knowingly* used a false document to solicit payment from the Government.  42 U.S.C. § 3729(a)(1)(A)-(B); *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005) ("The False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." (quoting *Clausen*, 290 F.3d at 1311)).  Under the FCA, "knowingly" "means that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information."  42 U.S.C. § 3729(b)(1)(A). "Innocent mistakes or negligence are not actionable, nor are imprecise statements arising from a disputed legal question."  *United States ex rel. Parato v. Unadilla Health Care Ctr., Inc.*, 787 F. Supp. 2d 1329, 1339 (M.D. Ga. 2011).

For example, Fresenius could simply assert that because no clear, authoritative statement by the government prohibited Fresenius's practices, its

interpretation of the obscure, relevant Medicare rules and regulations was reasonable. (*See, e.g.,* Def. Br. Opp. Relator Mot. Summ. J. ("Def. Summ. J. Br.") at 32, Doc. 107-2.)  *See United States ex rel. Hixon v. Health Mgmt. Sys., Inc.,* 613 F.3d 1186, 1190 (8th Cir. 2010) ("[W]e need not decide whether the defendants correctly interpreted [the statute at issue] since a statement that a defendant makes based on a reasonable interpretation of a statute cannot support a claim under the FCA if there is no authoritative contrary interpretation of that statute.  That is because the defendant in such a case could not have acted with the knowledge that the FCA requires before liability can attach.").  Likewise, Fresenius could assert the government knowledge defense, relying solely on "the government's knowledge of or cooperation with [its] actions."  *United States ex rel. Burlbaw v. Orenduff,* 548 F.3d 931, 953 (10th Cir. 2008) (explaining that the government knowledge defense applies when the government knowledge or cooperation "is so extensive that the contractor could not as a matter of law possess the requisite state of mind to be liable under the FCA").

To be sure, asserting a government knowledge defense may not always waive the attorney-client privilege protecting relevant communications.  In *Burlbaw*, the Tenth Circuit recognized that the "proper focus of the scienter inquiry under § 3727(a) must always rest on the defendant's 'knowledge' of whether the claim is false, a knowledge which may certainly exist even when a government agency misinterprets its own regulations and chooses — with full

comprehension of the facts — to pay a false claim." *Burlbaw*, 548 F.3d at 953. But the court went on to conclude that a defendant may not possess the requisite state of mind, as a matter of law, where the government knowledge of or cooperation with the defendant's conduct is extensive. *Id.* In such a case, the Court need only consider communications between the government and the defendant, and internal deliberations regarding the defendant's belief of the legality of its conduct are not at issue. *See, e.g., United States ex rel. Robinson v. Northrop Grumman Corp.*, No. 89 C 6111, 2003 WL 21439871, at *3 (N.D. Ill. June 20, 2003) (Mason, Mag. J.) (finding that defendant did not place privileged communications at issue by invoking a government knowledge defense, which focused solely on communications between the government and defendant).

Fresenius, on the other hand, has not presented extensive evidence of government knowledge or cooperation, and in any case, Fresenius affirmatively relies, not simply on its communications between the government, but its belief that its actions were lawful. In doing so, Fresenius "injected the issue of its knowledge of the law into the case and thereby waived the attorney client-privilege." *Cox*, 17 F.3d at 1419.

As the Court finds Fresenius's remaining arguments without merit,[4] it **GRANTS** Relator's Motion to Compel [Doc. 158]. Fresenius is **DIRECTED** to

---

[4] For example, Fresenius appears to argue that the wavier principle applied in *Cox* should not apply in a qui tam case because "[e]vidence that a defendant had a belief based on the government's knowledge of the disputed activity that its conduct was lawful is relevant (and

produce all attorney-client privileged documents that reflect Fresenius's understanding about whether overfill billing was permitted by the Medicare statute and implementing regulations.[5]   Likewise, this waiver of attorney-client privilege precludes Fresenius from asserting an attorney-client privilege objection to any testimony on the subject of Fresenius's belief regarding the legality of its overfill billing practice.   The parties are **DIRECTED** to agree upon a production schedule and file this schedule with this Court within seven (7) days of this Order.

**IT IS SO ORDERED** this 21st day of February, 2014.

_____
**Amy Totenberg**
**United States District Judge**

---

often) dispositive on issues of intent under the FCA."  (Def. Resp. Opp. Mot. Comple. at 1, Doc. 164.)  The Court rejects this proposition.  As the Relator explained, the waiver principle applied here has been applied in a variety of cases, and the Eleventh Circuit has indicated no exception for qui tam cases.  (*See* Pl. Reply at 3 n.3, Doc. 165 (collecting cases).)  Just as discussed above, the Circuit has not distinguished the waiver rule's applicability in civil and criminal cases.

[5] Relator also moves to compel the production of documents specifically reflecting Fresenius's understanding of how overfill was treated under the Average Sales Price methodology, because Fresenius failed to object to the request to the extent it sought privileged communications. Fresenius did in fact express a blanket objection to the production of any privileged communications.  (*See* Doc. 158-4, Obj. No. 2.)  Nonetheless, such documents are discoverable to the extent they reflect Fresenius's understanding about whether overfill billing was permitted by the Medicare statute and implementing regulations.